```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____                │
│ DATE FILED:  01/03/2025              │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEANNINE ANTUS,

                    Plaintiff,

        -against-

FRONTRUNNER TECHNOLOGIES USA, INC.,
FRONTRUNNER TECHNOLOGIES INC., and
NATHAN ELLIOT, individually,

                    Defendants.

---

23-CV-07058 (MMG)

**ORDER ADOPTING
REPORT &
RECOMMENDATION**

MARGARET M. GARNETT, United States District Judge:

On July 24, 2024, the Court granted Plaintiff Jeannine Antus's motion for default judgment, and referred the matter to Magistrate Judge Sarah L. Cave for a damages inquest. *See* Dkt. No. 40, 41. On December 3, 2024, Magistrate Judge Cave issued a Report and Recommendation recommending that Plaintiff be awarded, for her contract claim only, (1) damages in the amount of $267,980.77; (2) prejudgment interest in the amount of $58,125.03; and (3) post-judgment interest pursuant to 28 U.S.C. § 1961. *See* Dkt. No. 49 (the "R&R"). The R&R further notified the parties that they had 14 days from service of the R&R to file written objections to Magistrate Judge Cave's recommendations. *See* Dkt. No. 49 at 21. On December 6, 2024, Plaintiff filed Affidavits of Service confirming that service of the R&R was effectuated on all Defendants by mail and Federal Express on December 5, 2024, and by email on December 6, 2024. *See* Dkt. Nos. 50, 51.

Despite notification of the right to object to the R&R, no objections were filed. Where no timely objections are made, the Court may adopt the R&R as long as there is no clear error on the face of the record. *Sacks v. Gandhi Eng'g, Inc.*, 999 F. Supp. 2d 629, 632 (S.D.N.Y. 2014). **As there are no objections and as the Court finds no clear error in the record, the Court hereby adopts the R&R in its entirety.**

The Court has enclosed a copy of the R&R to this Order. The Clerk of Court is respectfully directed to enter judgment accordingly and to CLOSE this case.

Dated: January 3, 2025
       New York, New York

                    SO ORDERED.

                    _____
                    MARGARET M. GARNETT
                    United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEANNINE ANTUS,

                Plaintiff,

    -v-

FRONTRUNNER TECHNOLOGIES USA, INC.,
FRONTRUNNER TECHNOLOGIES INC., AND NATHAN
ELLIOT,

                Defendants.

CIVIL ACTION NO. 23 Civ. 7058 (MMG) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE MARGARET M. GARNETT**, United States District Judge:

## I. INTRODUCTION

In this action involving claims for breach of contract and for violations of the New York Labor Law ("NYLL") § 650 et seq., and New York's Wage Theft Prevention Act, NYLL § 195 ("WTPA"), Plaintiff Jeannine Antus, seeks unpaid wages and related relief from her former employers, Defendants Frontrunner Technologies USA, Inc., Frontrunner Technologies, Inc., and Nathan Elliot (together, "Defendants"). (ECF Nos. 1; 6). Antus alleges that, during her employment as a consultant, Defendants agreed to pay her first at a rate of $10,000 per month, and then at a salaried rate of $175,000 per year plus commissions, but they ultimately paid her only a small fraction of that amount. (ECF Nos. 1 ¶¶ 17–20; 6 ¶¶ 18–20; 46 ¶¶ 21–26, 29–30, 33, 36–39; 46-4 ¶¶ 7–11, 14–23). After Defendants failed to appear and defend in this action, the Clerk of the Court entered a certificate of default. (ECF No. 31; see ECF No. 27). Antus filed

a motion for default judgment, which the Honorable Margaret M. Garnett granted and thereafter referred for an inquest on damages.  (ECF Nos. 34–38; 40–41).

After review of Antus' proposed findings of fact and conclusions of law (the "Proposed Findings"), declaration, damages calculation (the "Damages Chart"), and accompanying exhibits (ECF Nos. 34–38; 46; 46-1–46-8 (collectively, the "Damages Submission")), we respectfully recommend that Antus be awarded a default judgment against Defendants as follows:

(1)  Damages in the amount of $267,980.77;

(2)  Prejudgment interest in the amount of $58,125.03; and

(3)  Post-judgment interest pursuant to 28 U.S.C. § 1961.

## II. <u>BACKGROUND</u>

### A.  <u>Factual Background</u>

Unless otherwise indicated, the Court summarizes the facts from the Amended Complaint and the Damages Submission, including the Proposed Findings, and the declaration Antus has submitted attesting to facts about her employment with Defendants.  (ECF Nos. 6; 46; 46-4). Given Defendants' default, the Court accepts as true all well-pleaded factual allegations against them, except as to damages.  See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Whitehead v. Mix Unit, LLC, No. 17 Civ. 9476 (VSB) (JLC), 2019 WL 384446, at *1 (S.D.N.Y. Jan. 31, 2019).[1]

---

[1] Unless otherwise indicated, all internal citations and quotation marks are omitted from case citations.

On April 19, 2021, Antus, a New York citizen, began working as a consultant for Defendants in New York pursuant to a three-month consulting contract (the "Consulting Contract"), which provided that she would be paid $10,000 per month through June 18, 2021. (ECF Nos. 6 ¶¶ 18–19; 46-4 ¶¶ 7, 24; 46-5).  In May 2021, Elliot offered Antus a full-time position at an annual salary of $175,000 plus commissions.  (ECF Nos. 6 ¶ 20; 46-4 ¶ 9).  Antus accepted the offer and, on June 19, 2021, began her term as a full-time salaried employee with the title of Chief Operating Officer pursuant to an employment agreement that she and Elliot executed (the "Employment Agreement").  (ECF Nos. 6 ¶ 20; 46-4 ¶ 20; 46-6).  Her position involved managing inventory, setting up installations, selling real estate, helping with ad sales, and managing advertising relationships.  (ECF No. 46-4 ¶ 25).  Antus did not keep track of her hours but "often worked well over 40 hours per week."  (ECF No. 46-4 ¶ 25).

In July 2021, Antus complained to Defendants that she had not received any payments under either the consulting contract or the employment agreement, in response to which Elliot assured her that he would pay her "as soon as possible" when "funding was available."  (ECF Nos. 6 ¶¶ 22–24; 46-4 ¶¶ 11–12).  Elliot again promised to pay Antus in October 2021 and January 2022, telling her that he was speaking to investors and expected funding "soon," but Elliot did not pay Antus.  (ECF Nos. 6 ¶¶ 25–29).  At a company-wide meeting in May 2022, Elliot announced that he had signed a term sheet for $5 million in external funding.  (ECF Nos. 6 ¶ 31; 46-4 ¶ 17).  Antus continued to complain to Elliot and others that she was not being paid, and Elliot continued to assure her that she would be paid.  (ECF Nos. 6 ¶¶ 33–39, 42; 46-4 ¶¶ 18–21).  Antus also learned that Defendants were not timely paying other employes their full wages

either.  (ECF No. 46-4 ¶¶ 20, 26).  Finally, on December 29, 2022, Defendants sent Antus a wire transfer of $65,000, less the $20 wire transfer fee.  (ECF No. 46-4 ¶ 22).

Antus continued working until April 2023, when, after realizing that Defendants would "never" pay her, she "stopped returning their phone calls and messages."  (ECF No. 46-4 ¶ 23).  Around this time, Defendants' Chief Financial Officer "began to harass" Antus, asking her for invoices, which she was not required to provide as a full-time employee working in New York. (ECF No. 6 ¶ 43).  Antus did not receive a wage notice when she was hired nor any weekly wage statements.  (ECF Nos. 6 ¶¶ 56–59; 46-4 ¶¶ 27–28).

**B.  <u>Procedural Background</u>**

On August 10, 2023, Antus filed the Complaint.  (ECF No. 1).  In response to an order directing her to properly allege the citizenship of each party (ECF No. 4), on August 23, 2023, she filed the Amended Complaint.  (ECF No. 6).  Antus asserts eight claims for: (i) minimum and overtime wages under the NYLL (the "Wage Claim"); (ii) violations of the WTPA (the "WTPA Claim"); (iii) breach of contract (the "Contract Claim"); (iv) quantum meruit (the "Quantum Meruit Claim"); (v) unjust enrichment (the "Unjust Enrichment Claim"); (vi) promissory estoppel (the "Promissory Estoppel Claim"); (vii) fraud (the "Fraud Claim"); and (viii) against Elliott only, a shareholder liability claim under New York Business Corporation Law § 630 (the "Section 630 Claim").  (ECF No. 6 ¶¶ 46–100).

Defendants executed waivers of service but never appeared or answered the Amended Complaint.  (ECF Nos. 9–11; 27).  On January 17, 2024, the Clerk of the Court entered a certificate of default against Defendants.  (ECF No. 31).  On February 20, 2024, Antus filed a motion for

default judgment (ECF Nos. 34–38), which Judge Garnett granted on July 25, 2024 and then referred for a damages inquest. (ECF Nos. 40–41).

On August 8, 2024, the Court issued a scheduling order that required Antus to submit the Proposed Findings and Damages Chart, with supporting documentation, and that warned Defendants that their failure to respond or contact the Court would result in a report and recommendation concerning damages based on Antus' Damages Submission alone without an in-court hearing. (ECF No. 45). On September 5, 2024, Antus filed the Damages Submission. (ECF Nos. 46–48). Antus seeks $621,503.54 in damages, plus punitive damages, pre- and post-judgment interest, and costs. (ECF No. 46-4 ¶¶ 29, 31). Defendants have not responded to the Damages Submission or otherwise contacted the Court.

### III. DISCUSSION

#### A. Legal Standards

##### 1. Obtaining a Default Judgment

A party seeking a default judgment must follow the two-step procedure set forth in Federal Rule of Civil Procedure 55. See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186–87 (2d Cir. 2015) (per curiam). First, under Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a certificate of default. See Fed. R. Civ. P. 55(a). Second, after entry of the default, if the party still fails to appear or move to set aside the default, the Court may enter a default judgment. See Fed. R. Civ. P. 55(b). Whether to enter a default judgment lies in the "sound discretion" of the trial court. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). Because a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, Meehan v. Snow,

652 F.2d 274, 277 (2d Cir. 1981) (per curiam), the district court must "carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other." Lopez v. Emerald Staffing, Inc., No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *4 (S.D.N.Y. Feb. 26, 2020).

In considering whether to enter a default judgment, district courts are "guided by the same factors [that] apply to a motion to set aside entry of a default." First Mercury Ins. Co. v. Schnabel Roofing of Long Is., Inc., No. 10 Civ. 4398 (JS) (AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011). "These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense." Avail 1 LLC v. Latief, No. 17 Civ. 5841 (FB) (VMS), 2020 WL 5633869, at *4 (E.D.N.Y. Aug. 14, 2020), adopted by, 2020 WL 5633099 (E.D.N.Y. Sept. 21, 2020) (citing Swarna v. Al-Awadi, 622 F.3d 123, 142 (2d Cir. 2010)); see Enron, 10 F.3d at 96 (noting that "[a]lthough the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment [] because the concepts of finality and litigation repose are more deeply implicated in the latter action").

## 2. **Determining Liability**

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," Rovio Ent., Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015) (summary order). The Court must determine "whether the allegations in [the]

complaint establish the defendants' liability as a matter of law."  Id.  If the Court finds the well-pleaded allegations establish liability, the Court analyzes "whether plaintiff has provided adequate support for the relief it seeks."  Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008).  If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, "even if the post-default inquest submissions supply the missing information."  Lopez, 2020 WL 915821, at *4.

### 3.  Determining Damages

Once liability has been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  Getty Images (US) Inc. v. Advernet, Inc., 797 F. Supp. 2d 399, 411 (S.D.N.Y. 2011) (citing Credit Lyonnais Sec. (USA) v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages."  Lopez, 2020 WL 915821, at *4.  The evidence the plaintiff submits must be admissible.  See Poulos v. City of New York, No. 14 Civ. 3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); see also House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("damages must be based on admissible evidence").  If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing.  Fustok v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (noting that a court may determine appropriate damages based on affidavits and documentary

evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment").

With respect to claims for unpaid wages, when the employer's payroll records are inaccurate or incomplete, "an employee has carried out his burden if he proves" enough for the court to make an "inference" that he "has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work." Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011). The Court may credit plaintiffs' "recollections regarding their hours and pay in conducting [the] inquest." Coley v. Vannguard Urban Improvement Ass'n, Inc., No. 12 Civ. 5565 (PKC) (RER), 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 29, 2018). The Court "must ensure that Plaintiffs' approximations and estimates are reasonable and appropriate." Id. Ultimately, the default judgment the court enters "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); see Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007) (limiting damages to those specified in the pleadings "ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer"); Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, No. 16 Civ. 1318 (GBD) (BCM), 2018 WL 4760345, at *1 (S.D.N.Y. Sept. 28, 2018) (holding that plaintiff could not recover damages for unalleged claims against defaulted defendant).

**B.  Default Judgment**

In accordance with the two-step process in Rule 55, the Clerk of the Court entered a certificate of default against Defendants (ECF No. 31), and they have failed to appear or otherwise

challenge the default.  (See ECF Nos. 27; 41).  The Court's analysis of the relevant factors set forth above reveals, first, that Defendants' failure to submit any written response to Antus' Damages Submission, after having been properly served, gives rise to the fair inference that their default was willful.  See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that a failure to respond to a complaint and subsequent motion for default judgment "indicate[s] willful conduct").  Second, delaying entry of a default judgment might prejudice Antus.  See Inga v. Nesama Food Corp., No. 20 Civ. 909 (ALC) (SLC), 2021 WL 3624666, at *6 (S.D.N.Y. July 30, 2021) (finding that FLSA plaintiff would "be prejudiced in the absence of a default judgment, not only by the delay in resolving this action, but by his inability to recover from another source for the lost wages and other losses he sustained while working for Defendants"), adopted by, 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021).  Third, Defendants have failed to appear, file an answer, and respond to the Court's orders.  Because the requirements of Rule 55 have been satisfied and the relevant factors weigh in Antus' favor, we respectfully recommend that a default judgment against Defendants and in favor of Antus be entered.

### C.  Liability

As noted above, before entering a default judgment, the Court must "determine whether the plaintiff's allegations establish the defendant's liability as a matter of law."  Moore v. Booth, No. 22-978, 2024 WL 4875629, at *7 (2d Cir. Nov. 25, 2024).  The Court has not previously analyzed the elements of any of Antus' eight claims, all of which—other than the WTPA Claim— seek recovery of the amounts Defendants contracted to pay her under the Consulting Agreement and the Employment Agreement.  (ECF Nos. 6 ¶¶ 46–100; 46 ¶¶ 49–80 (discussing elements of

each claim); 46-7 (Damages Chart); cf. ECF No. 41 (granting default judgment motion on all claims)).

As an initial matter, however, Antus' hourly rate of $84.13[2] far exceeds New York's applicable minimum wage rate,[3] and she has not provided proof of overtime hours worked—other than to say that she "often" worked more than 40 hours per week (ECF No. 46-4 ¶ 25), thereby precluding any finding that Defendants could be liable for minimum or overtime wages or liquidated damages under the NYLL. See Juarez v. Manhattan Laundry Centers Inc., No. 18 Civ. 2843 (VSB), 2023 WL 3614264, at *3 (S.D.N.Y. May 24, 2023) (declining to award minimum and overtime wages and liquidated damages where plaintiff failed to provide evidentiary support). In addition, "where an express contract covers the matter"—as in this case—relief under the family of quasi-contract claims Antus asserts—the Unjust Enrichment, Quantum Meruit, and Promissory Estoppel Claims—is "unavailable." City of Yonkers v. Otis Elevator Co., 844 F.2d 42, 48 (2d Cir. 1988) (citing New York cases). The same is true of Antus' Fraud Claim, which is based on the same facts as the Contract Claim. See Richbell Info. Servs., Inc. v. Jupiter Partners, L.P., 309 A.D.2d 288, 305 (1st Dep't 2003). Finally, the Section 630 Claim does not provide a different amount of recovery but rather only seeks to impose on Elliot joint and several liability for any damages awarded. (ECF No. 46 ¶¶ 77–80).

Accordingly, the Court will only analyze Defendants' liability on the Contract Claim and the WTPA Claim, which is the only other claim that could provide a different potential quantum of damages. See Burns v. Scott, 635 F. Supp. 3d 258, 279 (S.D.N.Y. 2022) (finding that "the only

---

[2] $175,000 / 52 / 40

[3] See NYLL ¶ 652(1)(a)(i) (setting minimum wage rate of $15.00 per hour for large employers in New York City on and after December 31, 2018).

basis for recovery of wages [was plaintiff's] breach of contract claim"); see Ramgoolie v. Ramgoolie, No. 16 Civ. 3345 (VEC) (SN), 2021 WL 8013769, at *7 (S.D.N.Y. Nov. 24, 2021) (explaining that, where plaintiff "adequately pleaded the existence of a contract and is awarded damages on that claim, she cannot doubly-recover" on other theories based on the same conduct), adopted by, 2022 WL 669868 (S.D.N.Y. Mar. 4, 2022), aff'd, 2024 WL 4429420 (2d Cir. Oct. 7, 2024).

### 1. Jurisdiction and Venue

As a threshold matter, the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2). The amount in controversy exceeds $75,000, Antus is a New York domiciliary, and Defendants are Canadian domiciliaries, which together give rise to diversity jurisdiction. (ECF No. 6 ¶¶ 8, 13–16).

Personal jurisdiction over Defendants is a "necessary prerequisite to entry of a default judgment." Pinzon v. 467 Star Deli Inc., No. 22 Civ. 6864 (JGK) (SLC), 2023 WL 5337617, at *4 (S.D.N.Y. July 31, 2023), adopted by, 2023 WL 5334757 (S.D.N.Y. Aug. 18, 2023). The Court has personal jurisdiction over Defendants, who employed Antus in New York and who were properly served. (ECF No. 6 ¶¶ 7–11). See N.Y. C.P.L.R. § 302(1).

Venue is proper because Antus worked for Defendants in this District. See 28 U.S.C. § 1391(b)(1). (ECF No. 6 ¶ 8; see ECF No. 46-4 ¶ 24).

### 2. Statute of Limitations

The statute of limitations is six years for breach of contract claims. N.Y. C.P.L.R. § 213. Any WTPA claim must also be brought within six years. See NYLL § 198(3). Antus worked for Defendants from April 19, 2021 until April 2023. (ECF Nos. 6 ¶ 18; 46-4 ¶¶ 8–11, 23). She filed

this action on August 10, 2023, well within the six-year limitations periods, so her Contract and WTPA Claims are timely.  (ECF No. 1).

### 3. Breach of Contract Elements

To state a claim for breach of contract under New York law, a plaintiff must allege four elements: "(1) the existence of a contract; (2) the performance of that contract by one party; (3) the breach of that contract by the other party; and (4) damages." LG Cap. Funding, LLC v. Energy Edge Techs. Corp., No. 17 Civ. 9021 (AKH), 2018 WL 4278344, at *1 (S.D.N.Y. Aug. 28, 2018); see Lenard v. Design Studio, 889 F. Supp. 2d 518, 528 (S.D.N.Y. 2012) (same).

In support of the Contract Claim, the Amended Complaint alleges and Antus attests that (i) Antus entered into the Consulting and Employment Agreements with Defendants, pursuant to which they agreed to pay her $10,000 from April to June 2021 and then an annual salary of $175,000, (ii) Antus performed work for Defendants for approximately one year, (iii) Defendants failed to pay her the full amount owed under the Agreements, and (iv) Antus has been damaged by the amount of the underpayment.  (ECF Nos. 6 ¶¶ 18–45; 46-4 ¶¶ 7–31). Defendants' "default is an admission of [these] well-pleaded allegations[.]"  Vt. Teddy Bear Co., 373 F.3d at 246. Accordingly, the Court finds that Antus has adequately pleaded the elements of the Contract Claim, i.e., that she and Defendants entered into contracts pursuant to which Defendants were required but failed to pay her salary, resulting in damages to Antus, to be calculated below. See Burns, 635 F. Supp. 3d at 278; Sudul v. Comput. Outsourcing Servs., 868 F. Supp. 59, 61 (S.D.N.Y. 1994).

### 4. **WTPA Elements**

Under the WTPA, "employers are required to provide employees with a notice containing the rate and frequency of their pay at the time of hiring, NYLL § 195(1), and to furnish them with a written statement with each payment of wages, listing the dates covered by the payment, the regular rate of pay, the overtime rate, and the number of hours worked, NYLL § 195(3)." Juarez, 2023 WL 3614264, at *4.

Antus alleges that Defendants failed to provide her with wage notices when she was hired and failed to furnish her with weekly wage statements. (ECF Nos. 6 ¶¶ 56–59; 46-4 ¶¶ 27–28). While Antus sufficiently pleads that Defendants failed to comply with NYLL ¶¶ 195(1)(a) and 195(3), Antus nevertheless lacks standing to maintain these claims. "Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" Maddox v. Bank of N.Y. Mellon Tr. Co., N.A., 19 F.4th 58, 62 (2d Cir. 2021) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)). To demonstrate an injury in fact, a plaintiff "must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." Id. (quoting Strubel v. Comenity Bank, 842 F.3d 181, 188 (2d Cir. 2016)). For an "informational injury" resulting from the failure to receive required information to give rise to standing, see TransUnion LLC v. Ramirez, 594 U.S. 413, 441–42 (2021), a plaintiff must allege "downstream consequences" resulting from the failure to receive the information that demonstrate an interest in using the information "beyond bringing [the] lawsuit." Harty v. W. Point Realty, Inc., 28 F.4th 435, 444 (2d Cir. 2022).

Here, Antus does not allege any facts describing an "injury in fact sufficient to confer standing and [has] not demonstrated how [the] lack of notice resulted in an injury greater than Defendants'" wage violations.  Pinzon, 2023 WL 5337617, at *11 (quoting Gao v. Umi Sushi, No. 18 Civ. 6439 (ALC) (SN), 2023 WL 2118203, at *7 (S.D.N.Y. Jan. 31, 2023), adopted by, 2023 WL 2118080 (S.D.N.Y. Feb. 17, 2023)).  Further, Antus has not identified an informational injury giving rise to consequences other than this lawsuit.  Id.  Following the decisions of other courts in this District, the Court respectfully recommends that no liability be imposed on Defendants, and no damages be awarded to Antus, on the WTPA Claim.  Id.; accord Chen v. Hunan Manor Enter. Inc., No. 17 Civ. 802 (GBD) (GWG), 2023 WL 5574854, at *13 (S.D.N.Y. Aug. 29, 2023); Najera v. Lake Ave Pizza LLC, No. 21 Civ. 6753 (LGS) (SLC), 2023 WL 5752588, at *9–10 (S.D.N.Y. Aug. 3, 2023), adopted by, 2023 WL 5748117 (S.D.N.Y. Sept. 6, 2023); Pinzon, 2023 WL 5337617, at *11; Reyes v. Coppola's Tuscan Grill, LLC, No. 21 Civ. 7040 (AT) (SN), 2023 WL 4303943, at *6 (S.D.N.Y. June 13, 2023), adopted by, 2023 WL 4304676 (S.D.N.Y. June 30, 2023); Belliard v. Tarnovsky, No. 20 Civ. 1055 (GBD) (KHP), 2023 WL 3004963, at *5–6 (S.D.N.Y. Mar. 6, 2023), adopted by, 2023 WL 3304723 (S.D.N.Y. May 8, 2023).

### D. Damages Calculation

#### 1. Evidentiary Basis

No party has requested a hearing on the issue of damages.  The Court must determine whether Antus has provided sufficient evidence to support her claimed damages.  See Transatlantic Marine, 109 F.3d at 111; Bleecker v. Zetian Sys., Inc., No. 12 Civ. 2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013).  In her Damages Submission, Antus includes her declaration attesting to the dates and circumstances of her employment, as well as the Damages

Chart. (ECF Nos. 46-4; 46-7). Despite a warning from the Court (ECF No. 45), Defendants have not responded to the Court's orders or provided any contrary evidence. The Court thus finds that Antus has met her evidentiary burden of proving damages, to the extent the Court has found them liable for the Contract Claim above. (See § III.C.3., supra). Therefore, the Court will conduct its damages inquest based solely on Antus' Damages Submission, which provides a sufficient basis from which to calculate damages. See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) ("[A] district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence."); Perez, 2019 WL 7403983, at *3; Fed.

R. Civ. P. 55(b)(2).

## 2. Contract Damages

"The general rule for measuring damages for breach of contract . . . is the amount necessary to put the plaintiff in the same economic position [s]he would have been in had the [d]efendant fulfilled his contract." Asesoral Bus. Partners, LLC v. Seatech Worldwide Corp., No. 19 Civ. 11512 (AJN) (SLC), 2021 WL 6755016, at *5 (S.D.N.Y. Dec. 16, 2021), adopted by, 2022 WL 1265945 (S.D.N.Y. Apr. 28, 2022). Under New York law, "[t]he damages an employee is entitled to recover for breach of an employment agreement are the amount of wages and other benefits [s]he [] would have received under the contract." Siegel v. Laric Enter. Corp., 307 A.D.2d 861, 862 (1st Dep't 2003). While a plaintiff is ordinarily "'required to mitigate damages upon breach, the burden of proving a lack of diligent effort to mitigate damages is upon the defendant[,]" which Defendants, by their default, have failed to do. Wilkinson v. R. MacDonald

Elec., Inc., No. 03 Civ. 6441, 2006 WL 8456460, at *2 (W.D.N.Y. July 10, 2006) (quoting Cornell

v. T.V. Dev. Corp., 17 N.Y.2d 69, 74 (1966)).

The Court finds that, under the Consulting and Employment Agreements as alleged in

the Amended Complaint and described in Antus' declaration, her damages for Defendants'

breach consist of the compensation she was to be paid, less the amount she was actually

paid.  See Burns, 635 F. Supp. 3d at 279; Wilkinson, 2006 WL 84576460, at *2.  The Court also

finds that the wire transfer fee Defendants imposed on Antus the one time they did pay

her is sufficiently incidental to her contractual damages as to warrant inclusion in the award.

(ECF No. 46-4 ¶ 22).  See Burns, 635 F. Supp. 3d at 279 (adding to contractual damages

amounts for bounced check and return fee).

Accordingly, the Court calculates Antus' damages on her Contract Claim as follows:

| Description | Amount |
|---|---|
| Consulting Contract, April 2021 | $10,000.00 |
| Consulting Contract, May 2021 | $10,000.00 |
| Salary June 19, 2021 – December 31, 2021[4] | $94,230.77[5] |
| Salary January 1, 2022 – December 31, 2022 | $175,000.00 |
| Salary January 1, 2023 – March 31, 2023[6] | $43,750.00[7] |
| Payments Received (Wire transfer)[8] | ($65,000.00) |
| **TOTAL** | **$267,980.77** |

---

[4] This period is 28 weeks.
[5] $175,000 / 52 * 28.
[6] This period is approximately 13 weeks.
[7] $175,000 / 52 * 13.
[8] The Court excludes the $20.00 wire transfer fee as explained above.

### 3.  Punitive Damages

Antus seeks punitive damages in the amount of $100,000, citing Defendants' "willful failure to pay wages and [] pattern and practice of unpaid wages to employees[.]"  (ECF Nos. 46; 46-4 ¶¶ 20, 26; 46-7).

New York State law provides that punitive damages are not recoverable for an ordinary breach of contract.  Rocanova v. Equitable Life Assur. Soc., 83 N.Y.2d 603, 613 (1994). Punitive damages may be awarded, however, if the defendant's conduct "was so outrageous as to evince a high degree of moral turpitude and showing such wanton dishonesty as to imply a criminal indifference to civil obligations."  Walker v. Stroh, 192 A.D.2d 775, 776 (3d Dep't 1993); Rocanova, 83 N.Y.2d at 613; Lavanant v. General Accident Ins. Co. of Am., 212 A.D.2d 450 (1st Dep't 1995).

Although Defendants surely acted in blatant disregard of their contractual obligations to Antus, the Court finds that, in failing to pay Antus (or other employees), Defendants did not act in a criminally indifferent manner.  See Cappetta v. Lippman, 913 F. Supp. 302, 307 (S.D.N.Y. 1996) (denying punitive damages for breach of contract claim).    Accordingly, we respectfully  recommend that no punitive damages be awarded.

### 4.  Prejudgment Interest

Antus seeks prejudgment interest on her "unpaid wages in accordance with [the] NYLL from March 31, 2023."  (ECF No. 46 at 15; see ECF Nos. 6 ¶ 1; 46-4 ¶ 31).

While the Court is not awarding Antus any damages under the NYLL, New York law also  provides that "'a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right.'"  Midwood Junction v. Puerto del Sol Int'l Inv., S.A., No. 15 Civ. 5181 (RA) (SN), 2016 WL 8905357, at *4 (S.D.N.Y. Dec. 5, 2016) (quoting U.S. Naval Inst. v. Charter

Commc'ns, Inc., 936 F.3d 692, 698 (2d Cir. 1991)); see N.Y. C.P.L.R. § 5001(a) (providing that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract").

Under New York law, interest is awarded at the rate of nine percent per year.  N.Y. C.P.L.R. § 5004.  For damages occurring "at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001.  Simple prejudgment is calculated "by multiplying the principal by the interest rate by the time period—from a singular midpoint date—up until and including the date judgment is entered."  Maldonado v. La Nueva Rampa, Inc., No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012).  The midpoint of a plaintiff's employment is often used as the date from which to calculate prejudgment interest in employment cases.  See Burns, 635 F. Supp. 3d at 282.

Antus does not calculate prejudgment interest.  (See ECF Nos. 46; 46-7).  The Court employs the methodology set forth above and finds that Antus' employment lasted from April 19, 2021 to March 31, 2023—a total of 711 days— the midpoint of which was April 9, 2022.  (ECF No. 46-4 ¶¶ 7–23).  Accordingly, we respectfully recommend an award of prejudgment interest on Antus' contractual damages calculated from April 9, 2022 through September 5, 2024, the date Antus filed the Damages Submission.  See Burns, 635 F. Supp. 3d at 282 (using date of plaintiff's damages submission as endpoint for calculating prejudgment interest).  This amount is calculated as follows:

| Principal | Interest Calculation | Interest Amount |
|---|---|---|
| $267,980.77 | 2.41 years[9] * $267,980.77 * 0.09 | $58,125.03 |

### 5. Post-judgment Interest

Antus also seeks post-judgment interest.  (ECF Nos. 6 ¶ 1; 46 at 15).  The applicable federal statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . calculated from the date of entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of judgment."  28 U.S.C. § 1961.  The Second Circuit has explained that an award of post-judgment interest is mandatory. See Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008); see also Burns, 635 F. Supp. 3d at 283. Given the mandatory nature of post-judgment interest, we respectfully recommend that Antus be awarded post-judgment interest in an amount consistent with 28 U.S.C. § 1961.

### 6. Costs

Antus seeks an award of costs in the amount of $402.00, representing the fee for filing this action.  (ECF Nos. 46 at 14; 46-4 ¶ 30; 46-7).  While an employee who prevails in a wage-and-hour action is entitled to recover costs under the NYLL, NYLL ¶ 663(1), the Court has not awarded any damages under the NYLL.  (See § III.C., supra).  Neither the Consulting Agreement nor the Employment Agreement contemplate an award of costs in the event of breach.  (ECF Nos. 46-5; 46-6).  Accordingly, we respectfully recommend that no costs be awarded.

---

[9] There are 880 days between April 9, 2022 and September 5, 2024, or 2.41 years (880 / 365).

## IV. <u>CONCLUSION</u>

For the reasons set forth above, we respectfully recommend that Antus be awarded on

her Contract Claim <u>only</u>, and all Defendants be held jointly and severally liable for:

(1) Damages in the amount of $267,980.77;

(2) Prejudgment interest in the amount of $58,125.03; and

(3) Post-judgment interest pursuant to 28 U.S.C. § 1961.

Dated:      New York, New York
            December 3, 2024

_____
**SARAH L. CAVE**
**United States Magistrate Judge**

*                    *                    *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Garnett.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).